IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 29, 2010

## STATE OF TENNESSEE v. HUEDEL SPARKMAN

**Direct Appeal from the Circuit Court for Marshall County**
**No. 17170     Robert Crigler, Judge**

———————————

**No. M2009-02511-CCA-R3-CD - Filed December 10, 2010**

———————————

A Marshall County Circuit Court jury convicted the appellant, Huedel Sparkman, of one count of possession of .5 grams or more of cocaine with the intent to sell and one count of possession of .5 grams or more of cocaine with the intent to deliver, class B felonies. At sentencing, the trial court merged the convictions and imposed a sentence of 25 years' incarceration to be served as a Range III, persistent offender, consecutively to any unserved sentence. In this appeal as of right, the appellant argues that the evidence is insufficient to support his convictions and that the trial court imposed an excessive sentence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are
Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Stephanie Barka (at trial) and William J. Harold (at trial and on appeal), Assistant District Public Defenders, for the appellant, Huedel Sparkman.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The appellant's convictions arose from a cooperative investigation conducted by the 17th Judicial District Drug Task Force, the 21st Judicial District Drug Task Force, and the Maury County Sheriff's Department Drug Task Force on September 30, 2005.

Jackie Renee Cannon testified that she was employed as a paid confidential informant with the 17th Judicial District Drug Task Force (DTF) in September 2005. She stated that she provided information to the DTF and made controlled purchases for the DTF in exchange for payment. She said that she usually earned $150 for each transaction in which she assisted.

Ms. Cannon testified that she had known the appellant approximately eight years. In September 2005, the appellant telephoned her and asked her to drive him from his home in Columbia, Tennessee to Fayetteville, Tennessee. The appellant told Ms. Cannon that he needed to make some money and that he had some drugs to sell. Ms. Cannon telephoned Tim Miller, the Assistant Director of the DTF, and set up a "three-way call" with the appellant in order to confirm their plan. During their conversation, Ms. Cannon and the appellant made plans for her to pick up the appellant and drive him to Fayetteville.

Based upon this conversation and Ms. Cannon's report that the appellant intended to sell drugs while in Fayetteville, the DTF prepared Ms. Cannon to take part in an interdiction stop on Interstate 65. Before going to pick up the appellant, the officers searched Ms. Cannon's vehicle to confirm the absence of any illegal substances. They also installed both video and audio recording devices in the vehicle. However, the videotape recorder malfunctioned, leaving only a poor quality audiotape recording of their activities.

Ms. Cannon testified that she met the appellant near the square in downtown Columbia and followed him to his home. Once they arrived at his residence, the appellant gave Ms. Cannon $10, and she went to a nearby gas station to purchase gas for her car. She then returned to the appellant's home, and the two began their journey to Fayetteville. While traveling south on I-65 toward Fayetteville, an officer pulled over Ms. Cannon because she was not wearing her seat belt. Ms. Cannon was placed in the officer's cruiser and consented to a search of her car. She saw the officer search the appellant, find something in the appellant's pocket, and arrest the appellant. She never saw any drugs in the appellant's possession.

Deputy Billy Osterman testified that in September 2005, he worked as a "tech man" with the Marshall County Sheriff's Department Drug Task Force. His duties included installing, maintaining, and monitoring the surveillance equipment in Ms. Cannon's car. He admitted that the audio recording was "poor quality" due to the distance from which it was monitored and the size of the transmitter. He explained that the need for a quality recording

was mitigated by the fact that the transaction monitored was an interdiction traffic stop and not a controlled drug purchase.

Deputy Shane Daugherty testified that he was a criminal interdiction officer with the 21st Judicial District Drug Task Force and that he stopped Ms. Cannon's car on I-65 as part of the pre-arranged plan to arrest the appellant. He recalled that the appellant seemed "very nervous about something" during the stop. Ms. Cannon consented to a search of her car. In the process of searching Ms. Cannon's car, Deputy Daugherty asked the appellant to step out of the car. When the appellant stepped out, Deputy Daugherty noticed a "large bulge in [the appellant's] left front pants pocket." He asked the appellant to remove the items from his pocket, so the appellant removed a set of keys and some money. Deputy Daugherty said that there was still something in the appellant's pocket. He asked the appellant what was in his pocket and the appellant admitted that it was cocaine. As Deputy Daugherty arrested the appellant, he removed a bag of cocaine from the appellant's pocket. He described the quantity as "a seller's amount." There were no pipes or other drug paraphernalia found in the car.

Maury County Sheriff's Department Lieutenant William Dolle testified that he was working for the Maury County Drug Task Force in September 2005 and that he assisted in the surveillance of Ms. Cannon and the appellant. His recollection of their journey was consistent with Ms. Cannon's testimony. Lieutenant Dolle talked to the appellant at the arrest scene. The appellant told Lieutenant Dolle that he wanted to assist them in order to avoid a parole violation. The appellant told the officers several sources for the cocaine and that he had planned to sell the cocaine in Fayetteville. None of the sources could be confirmed, so the appellant was taken to jail later that day.

Assistant Director Tim Miller of the DTF testified that he listened to and recorded the three-way telephone call during which Ms. Cannon and the appellant planned the appellant's journey to Fayetteville. Assistant Director Miller said that he planned the interdiction stop. His description of the stop was consistent with the testimony of other witnesses. He stated that Deputy Daugherty recovered over 20 grams of cocaine from the appellant's pocket.

Director Timothy Lane of the DTF testified that part of his duties as director included acting as custodian of evidence. He said that he received the cocaine from Assistant Director Miller and packaged it for shipment to the Tennessee Bureau of Investigation (TBI) Crime Lab. He recalled that the cocaine weighed 22.9 grams and said that a normal "user amount" was approximately .2 grams. He explained that the amount recovered from the appellant could produce "115 rocks" of crack cocaine. He also said that it was unlikely this amount was for personal use in light of its quantity and the lack of any drug paraphernalia found on the appellant or in the car.

John Scott, Jr., a forensic chemist with the TBI Crime Lab, testified that his analysis of the substance recovered from the appellant's pocket confirmed it to be 22.9 grams of crack cocaine.

Based upon this evidence, the jury convicted the appellant as charged in the indictment. On appeal, the appellant contends that the evidence was insufficient to support his convictions and that the trial court imposed an excessive sentence.

## II. Analysis

*Sufficiency of the Evidence*

The appellant argues that the evidence was insufficient to support his convictions because he did not possess the cocaine with the intent to sell or deliver but only for his personal use. He also contends that the confidential informant "does not have any credibility" because she "was motivated by the opportunity to earn money." The State argues that the evidence "was more than sufficient" based upon the quantity of the cocaine possessed by the appellant and the appellant's confession to the officers that he planned to sell the cocaine in Fayetteville. We agree with the State.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In order to sustain the appellant's conviction, the State was required to prove that the appellant knowingly possessed more than .5 grams of cocaine with the intent to sell or deliver. Tenn. Code Ann. §§ 39-17-417(a)(4), (c)(1) (2003). "The one element present in almost all criminal offenses which is most often proven by circumstantial evidence is that relating to the culpable mental state." State v. Harold Wayne Shaw, No. 01C01-9312-CR-00439, 1996 WL 611158, at *3 (Tenn. Crim. App. at Nashville, Oct. 24, 1996). Notably,

Tennessee Code Annotated section 39-17-419 (2003) provides, "It may be inferred from the amount of a controlled substance ..., along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

The evidence presented in this case showed that the appellant contacted Ms. Cannon for the purpose of obtaining a ride to Fayetteville in order to make some money selling cocaine. The jury accredited the testimony of Ms. Cannon, as was their province to do. The appellant was found in possession of 22.9 grams of cocaine, which officers testified was an amount comparable to that carried by a dealer and atypical of an amount for personal use. No other evidence of personal use was recovered on the appellant or in the car. Furthermore, the appellant admitted to officers that he intended to sell the cocaine in Fayetteville. Even absent the statutory inference concerning the amount of cocaine possessed by the appellant, the evidence in this case supports the appellant's convictions.

*Sentencing*

The appellant also argues that the trial court erred in imposing a sentence at the midpoint of his sentencing range. He contends that he should have been sentenced "closer to the minimum end of Range III" in consideration of the mitigating and enhancing factors present in his case as well as the need to "preserve precious Department of Correction[] resources." The State argues that the trial court's imposition of a 25 year sentence was appropriate in this case, noting that the 2005 amendments to the Sentencing Act afford more discretion to the trial court's sentencing decision as long as the sentence imposed is consistent with the purposes and principles of the sentencing.

We begin our analysis with these long-standing principles in mind. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The

burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114 (2006); State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence ... [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 345-46.

Possession of .5 grams or more of cocaine with the intent to sell is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1). Based upon his history of criminal convictions, the appellant qualified as a Range III, persistent offender. Id. § 40-35-107. Therefore, the applicable sentencing range was 20 to 30 years' incarceration. Id. § 40-35-112(c)(2). The

trial court imposed a midpoint sentence of 25 years' incarceration based upon its consideration of the appellant's history of criminal convictions and criminal behavior, including his admitted drug use, and beyond that necessary to establish his range classification as a persistent offender. Id. § 40-35-114(1). The trial court also considered the appellant's history of parole revocations as evidence of the appellant's inability to comply with conditions of release. Id. §40-35-114(8). The record supports these findings. Furthermore, the record reveals that the trial court considered the principles of sentencing in arriving at its decision. Accordingly, we conclude that the trial court's imposition of a 25 year sentence was appropriate.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE